FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 20, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>ABDIRAHMAN AHMED HASSAN,<br><br>　　　　　　　Defendant. | No.　4-18-cr-06014-SMJ<br><br>**ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL** |

Defendant was charged with defrauding the federal government by allowing customers at his grocery store to use Supplemental Nutrition Assistance Program (SNAP) benefits to purchase non-food items and pay down debts. Following a four-day trial, a jury found Defendant guilty on eighteen counts of wire fraud, one count of SNAP fraud, and one count of theft of government property. Defendant now contends the Government failed to introduce sufficient evidence to sustain that verdict and moves for a judgment of acquittal. He also contends that the jury failed to "engage in serious deliberations" before returning a guilty verdict. For the reasons set forth below, the Court finds that there was sufficient evidence for a rational juror to find the elements of the charged offenses proven beyond a reasonable doubt, and accordingly denies Defendant's motion on both grounds.

ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL **-** 1

## BACKGROUND

Defendant owned and operated the East Africa Halal and Grocery store in Kennewick, Washington. The store, which primarily catered to African immigrants and refugees, sold specialty meats and perfumes, among other general merchandise, including staple foods, household goods, and prepaid cell phone minutes. In addition to other forms of payment, Defendant's store accepted Supplemental Nutrition Assistance Program (SNAP) benefits.

SNAP is a program funded by the federal government to assist needy individuals with securing adequate food for their households. Each month, income-qualified individuals receive an allowance of SNAP benefits which are automatically credited to an electronic account. Crucially, those benefits may only be redeemed for eligible food items. *See* 7 C.F.R. § 274.7(a) ("Program benefits may be used only . . . to purchase eligible food for the household"); § 271.2 (defining eligible food). Some retailers—generally large chain grocery stores—use point-of-sale systems that automatically sort eligible food from non-eligible merchandise, allowing customers to redeem SNAP benefits only for the former. Retailers without such a system must manually sort a customer's purchase.

Retailers must apply and be authorized by the federal government to accept SNAP benefits. At an authorized SNAP retailer, customers redeem their benefits through a process not unlike using a credit or debit card. First, the retailer calculates

the total amount due for the customer's purchase of eligible food items. The retailer then processes the transaction through an electronic terminal, which communicates with a computer server in either Wisconsin or Arizona. The transaction total is debited from the customer's SNAP account and the retailer is reimbursed by the federal government. Only the transaction total is sent to the government's servers. As one witness described it, the arrangement relies on the "honor system"— when a retailer submits a SNAP transaction, the retailer represents that a customer has purchased eligible food items, but there is no mechanism in place to verify that.

In late 2016, law enforcement came to suspect that fraudulent SNAP transactions were occurring at Defendant's store. Throughout the spring of 2017, investigators equipped and worked with a confidential human source (CHS) who covertly recorded himself purchasing prohibited non-food items at Defendant's store using SNAP benefits. Each time the CHS did so, one of Defendant's employees processed the fraudulent transaction, although on one occasion video evidence showed Defendant standing a few feet away while the transaction took place. On another occasion, the CHS attempted to purchase prohibited items directly from Defendant, who refused to do so but instructed the CHS to return the following day, when an employee who had previously allowed prohibited transactions would be working.

Law enforcement also gathered records from several sources, including the

government agency that records SNAP transactions. Eventually, based on the information gathered, law enforcement obtained a warrant and searched Defendant's store. Among other items, investigators seized several notebooks containing records of debts incurred by the store's customers, which at trial were referred to as "ledgers." At trial, there was testimony from a witness who saw Defendant record a payment she made using SNAP benefits toward an outstanding debt in one of the ledgers. There was also testimony from an individual who operated a business from inside Defendant's store that he helped Defendant establish a bookkeeping method that involved the ledgers. The Court found there was sufficient evidence to find Defendant made some of the entries in the ledgers, and sufficient evidence to find that Defendant possessed the ledgers and relied on them in managing the store's finances. *See* ECF No. 123 at 5–8.

Several witnesses—many of whom had apparently engaged in fraudulent transactions with their SNAP benefits—were interviewed and granted immunity from prosecution to testify against Defendant. Defendant was eventually indicted for nineteen counts of wire fraud, one count of SNAP fraud, and one count of theft of government property. At the close of trial, the Government dismissed one of the wire fraud counts. The jury returned a verdict finding Defendant guilty of the remaining twenty counts, and Defendant now challenges the sufficiency of that verdict. He also moves for a new trial because he claims the jury—which returned

a guilty verdict after roughly two and a half hours—failed to deliberate for a sufficient amount of time.

## LEGAL STANDARD

Within fourteen days after the jury returns a guilty verdict, a criminal defendant may move for a judgment of acquittal or renew such a motion made before the jury began deliberations. Fed. R. Crim. P. 29(c)(1). The Court must enter a judgment of acquittal if "the evidence [was] insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Evidence is sufficient to sustain a conviction if, when viewed in the light most favorable to the Government, "any rational trier of fact could . . . f[i]nd the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

This standard gives the jury "broad discretion in deciding what inferences to draw from the evidence presented at trial." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012). It requires only that "jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). In evaluating the sufficiency of the evidence, it is not the Court's role to weigh the evidence or assess the credibility of witnesses; rather, the Court's duty is merely to determine if a rational juror could have found the essential elements of the offense proven beyond a reasonable doubt. *United States v. Nevils*, 598 F.3d 1158, 1170 (9th Cir. 2010) (en banc) (quoting *United States v. Cluchette*, 465 F.2d 749, 754 (9th Cir. 1972)).

A criminal defendant may also move for a new trial within fourteen days after the jury returns a guilty verdict where the basis for the motion is something other than newly discovered evidence. Fed. R. Crim. P. 33(b)(2). A new trial may be granted "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Respect for the jury's role counsels against ordering a new trial except in "exceptional cases in which the evidence preponderates heavily against the verdict.'" *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981) (quoting 2 Wright, Federal Practice and Procedure, Criminal § 553 at 487 (1969)). Thus, the fact that a jury did not deliberate for long is not itself a sufficient basis to order a new trial. *See United States v. Cunningham*, 108 F.3d 120, 123–24 (7th Cir. 1997) ("[T]he time it takes the jury to decide is not the relevant factor. The weight of the evidence is."); *see also United States v. Vaksman*, No. CR-09-0059-JLQ, 2009 WL 4722248, at *3 (E.D. Wash. Dec. 4, 2009).

## DISCUSSION

The jury found Defendant guilty of eighteen counts of wire fraud, one count of SNAP fraud, and one count of theft of government property. *See* ECF No. 127. Defendant asserts the Government failed to introduce sufficient evidence to sustain a conviction on any count. ECF No. 131 at 3. The Court thus briefly summarizes the elements of the offenses and the evidence introduced by the Government, which the Court concludes was sufficient to sustain the jury's verdict as to each count.

## A. Wire Fraud

The jury was instructed that to convict Defendant of wire fraud, the following must be proven beyond a reasonable doubt:

> First, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts. . . ;
>
> Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;
>
> Third, the defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and
>
> Fourth, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

ECF No. 122 at 20; *see also United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013) (citing *United States v. Pelisamen*, 641 F.3d 399, 409 (9th Cir. 2011)). Jurors were also instructed that they could find Defendant guilty if he aided and abetted wire fraud; that is, if he "acted with the knowledge and intention" of helping another commit wire fraud. ECF No. 122 at 22.

At trial, there was sufficient evidence of Defendant's participation in a scheme to defraud. The scheme was rather uncomplicated. Defendant, or his employees, would permit customers to redeem SNAP benefits for either prohibited non-food items or in payment of a debt, and Defendant would receive cash payments, to which

he was not entitled, from the federal government. Each of the eighteen counts of wire fraud corresponded to an individual SNAP transaction resulting in such a payment. For each charged transaction, the Government introduced the relevant page of the ledgers seized from Defendant's store, which reflected a deduction of an identical dollar amount from a customer's outstanding debt. From this evidence, the jury could reasonably infer that the ledgers recorded customers redeeming benefits for debt payments, rather than to purchase eligible food.[1]

In explaining the basic setup of the SNAP system, the Government established that when a retailer processes a SNAP transaction, and is reimbursed with money belonging to the federal government, the retailer represents that a customer purchased eligible food items. Accordingly, based on the information presented at trial, there was sufficient evidence to establish a scheme to defraud the federal government of money, and sufficient evidence for a rational juror to conclude that Defendant devised or participated in that scheme.

The jury also had sufficient evidence to conclude that the allegedly false representations—that a customer had purchased eligible food items, entitling Defendant to reimbursement—were material to the scheme to defraud. The Government introduced testimony that those representations were implied every

---

[1] Notably, SNAP benefits may never redeemed in payment for a debt, even if the debt was incurred for eligible food items. *See* 7 C.F.R. § 272.8(f).

ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL **-** 8

time a retailer processed a SNAP transaction, because the arrangement was based largely on the "honor system," and the retailer would not receive the payment from the government without that representation.

Several pieces of evidence would permit a rational juror to conclude that Defendant had the subjective intent to defraud. On one occasion, Defendant refused to conduct a prohibited transaction with the CHS, but instructed him to return the following day to buy the prohibited items from one of his employees—suggesting both that Defendant knew SNAP benefits could not be redeemed for non-food items and that he was willing to reap the benefits of the fraudulent scheme so long as he could maintain plausible deniability. Moreover, Defendant's signed application to accept SNAP benefits would support a rational juror in inferring that he understood SNAP benefits could not be redeemed for certain purposes, including to pay down debt. This evidence, combined with the handwritten ledgers and video of Defendant within feet of the cash register while the CHS redeemed SNAP benefits for prohibited non-food items, would permit a rational juror to conclude that Defendant subjectively intended to defraud the federal government of money.

Finally, the Government introduced sufficient evidence of an interstate wire communication through the testimony of Kyle Witkowiak, who testified that SNAP transactions are processed on servers either in Wisconsin or Arizona. Mr. Witkowiak explained to the jury that as a result of the servers' locations, every SNAP transaction

conducted in Washington—including all of the charged transactions—necessarily includes a wire communication from Washington to either Wisconsin or Arizona.

Taken together, the Government's evidence was sufficient to permit a rational juror to find the elements of wire fraud established beyond a reasonable doubt as to each of the eighteen counts on which they returned a verdict of guilty.

**B.     SNAP Fraud**

To convict Defendant of SNAP fraud, the jury was instructed that it must find the following proven beyond a reasonable doubt:

> First, the defendant knowingly acquired more than $5,000 worth of SNAP benefits in a manner that was contrary to law; and
>
> Second, the defendant knew that his acquisition of the SNAP benefits was contrary to law.

ECF No. 122 at 24; *see also* 7 U.S.C. § 2024(b)(1).

The Government introduced enough evidence for a rational jury to find both of these elements proven beyond a reasonable doubt. The jury found Defendant guilty on all eighteen counts of wire fraud, which corresponded to allegedly unlawful SNAP transactions totaling $4221.39. *See* ECF No. 1 at 6–7; ECF No. 127 at 1–5. The Government also introduced testimony that transactions recorded in the ledgers maintained in Defendant's store—that is, those reflecting payments toward outstanding debts, a prohibited use of benefits—corresponded to SNAP transactions totaling over $13,000. This evidence of fraud was corroborated by testimony that

when it came to the sum and volume of SNAP transactions, Defendant's store far exceeded comparable retailers. Though circumstantial, this evidence was sufficient for a rational juror to conclude that Defendant fraudulently acquired more than $5000 in SNAP benefits. There was also sufficient evidence for a rational juror to conclude that Defendant knew his acquisition of those benefits was contrary to law. The Government introduced an application, signed by Defendant, to enable his store to accept SNAP benefits. By signing the application, Defendant acknowledged he had been provided with the regulations establishing how SNAP benefits could—and could not—be legally redeemed; that SNAP benefits could not be legally used as payment for non-food items or as payment towards a debt; and that Defendant would be responsible for ensuring that his employees understood these regulations and would abide by them.

## C. Theft of Government Property

The jury was instructed that to convict Defendant of theft of government property, it must find the following proven beyond a reasonable doubt:

> First, the defendant knowingly stole, or converted to defendant's use, money with the intention of depriving the owner of the use or benefit of the money;
>
> Second, the money belonged to the United States; and
>
> Third, the value of the money was more than $1,000.

ECF No. 122 at 29; *see also* 18 U.S.C. § 641.

The same evidence that would enable a rational juror to find Defendant guilty of SNAP fraud is sufficient to sustain the jury's guilty verdict for theft of government property. There was sufficient evidence that Defendant or his agents knowingly processed SNAP transactions for prohibited purposes, such as debt payments, and thereby acquired more than $1000 in funds that belonged to the United States. Accordingly, the guilty verdict on Count 21 of the indictment was supported by sufficient evidence.

**D.     Insufficient Deliberations**

Defendant also argues the jury failed to engage in "serious deliberations" before returning a guilty verdict on all twenty counts. ECF No. 131. The jury returned its verdict approximately two and a half hours after retiring to deliberate, including a forty-five-minute lunch break. ECF No. 125 at 2. Defendant simply states that "less than two hours of deliberations does not satisfy due process." ECF No. 131 at 4. But the sufficiency of the evidence, not the length of time the jury took to consider that evidence, is what matters. *See Cunningham*, 108 F.3d at 124. "A brief deliberation cannot, alone, be a basis for an acquittal." *Id.* The Court finds there was sufficient evidence to sustain the jury's verdict, and thus the amount of time the jurors took to deliberate is immaterial. Accordingly, the Court will not order a new trial on this basis.

**CONCLUSION**

The Government introduced sufficient evidence of a scheme to defraud the federal government of thousands of dollars by fraudulently processing SNAP transactions and thereby receiving cash reimbursement. And as the Government introduced sufficient evidence to permit a rational juror to conclude that Defendant participated in—if not designed—that scheme, the Court will not disturb the jury's verdict. Nor does the Court find the length of time the jury deliberated sufficient to warrant a new trial. The motion is denied.

Therefore, **IT IS HEREBY ORDERED**:

Defendant's Motion for Judgment of Acquittal, **ECF No. 131**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 20th day of November 2019.

_____
SALVADOR MENDOZA, JR.
United States District Judge